415 So.2d 652 (1982)
Herbert MOUTON (Martin) et al., Plaintiffs-Appellants,
v.
Peter VALLOT, Defendant-Appellee.
No. 8850.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
*653 Peter C. Piccione, Sr., Lafayette, for plaintiffs-appellants.
James E. Fontenot, Abbeville, for defendant-appellee.
Before GUIDRY, STOKER and LABORDE, JJ.
STOKER, Judge.
The issues in this appeal arise out of a partition suit filed by Herbert Mouton, a/k/a Martin, and others referred to herein as "the Moutons". The Moutons are listed in footnote 1 to this opinion.[1]
Petitioners bring this suit against Peter Vallot and allege that they are owners in common with him of three tracts of land of 7.45 acres (tract one), 5 acres (tract two), and 15 acres (tract three).[2]
Defendant Peter Vallot first filed an answer and thereafter his widow, Melder Taylor, was substituted in his place as defendant in the capacity of administratrix of the Succession of Peter Vallot, Sr.
The issues in this appeal involve only tracts one and two, the 7.45 acre tract and the 5 acre tract. The 15 acre tract is not involved. On behalf of the succession Melder Taylor filed an exception of no right of action grounded on the allegation that certain plaintiffs or their ancestors in title had sold all of their rights, title and interest in tracts one and two. Melder Taylor also filed an exception of res judicata based on allegations that there had been a previous partition by licitation of tracts one and two in a suit filed on November 23, 1954, numbered 18,831 on the docket of the Fifteenth District Court for Vermilion Parish.
The primary issue, however, stems from a supplemental and amending petition filed in the trial court on the day the exceptions referred to were heard. This date was August 6, 1981. In the amended pleading the Moutons sought additional relief in the form of an action of nullity. They alleged that none of the plaintiffs were ever served or notified in any way of the sheriff's sale which resulted from the prior partition suit. In addition to demanding a partition the Moutons prayed that the judgment and sale in the previous partition suit be voided, nullified and set aside and that petitioner's title to tracts one and two be confirmed.
Although we have not been able to find it in the record, we are advised by counsel through their briefs and through a minute entry (reasons for judgment) of the trial court dated October 7, 1981, that the action of nullity was met by an exception of prescription of two and five years by the defendant *654 succession. As shown by the trial court's reasons for judgment, the trial court ruled in favor of defendant-appellee and held that any action of nullity as to the partition judgment in suit number 18,831 had prescribed. The trial court's minute entry reads as follows:

"MINUTE ENTRY
"This matter was before the Court on August 6, 1981, on an exception of prescription entered by counsel for defendant opposing the plaintiffs' collateral attack of a judgment for partition by licitation and the Sheriff's sale which occurred on March 5, 1955.
"After considering the evidence presented and the briefs submitted by counsel, the Court sustained the exception of prescription as to Tracts I and II in the plaintiff's petition. The Court finds that the applicable prescriptive periods for attacking the validity of a public sale pursuant to a partition are two and five years as stated in Article 3543 of the Louisiana Civil Code. Plaintiffs filed this suit on April 25, 1975, which was more than twenty (20) years after the Sheriff's sale.
"The Court further finds the partition judgment of May, 1955 entered in Suit Number 18831, Peter Vallot vs. Lawrence Mouton, et al, not subject to annulment for vice of form or substance. The absentee defendants in that suit were served with process through the Court-appointed attorneys as required by law. The fact that all but one of the attorneys failed to answer opposing the partition does not constitute fraud or ill practice in this case. More importantly, if the attorneys failed to perform any duty imposed on them, such failure would not affect the validity of the judicial sale. See LSA-C.C.P. Article 5098 and Demery vs. Nelken, 385 So.2d 531 (La.App. 3rd Cir. 1980).
"Costs of this matter to be borne by plaintiffs."
Based on the above minute entry the trial court signed a judgment sustaining the exceptions of res judicata and no right of action filed on behalf of the defendant succession insofar as they applied to tracts one and two. In their briefs, counsel do not actually address any issues relative to the exceptions of res judicata and no right of action. Rather, all argument is devoted to the question of prescription of the action of nullity and the question of whether the former judgment is null because of a defective service or process or an invalid judgment of default or because of fraud or ill practices. Therefore, we shall treat this present suit as an action to nullify the former judgment of partition.
The Moutons contend that the previous judgment is null because of improper service of process upon the defendants and because the judgment of default rendered against some of the absentee defendants is invalid. Specifically, the Moutons claim that the curators did not notify the absentee defendants of the suit nor did most of them file answers to the suit or appear in court or at the sheriff's sale on behalf of the defendants. The Moutons also allege that these actions by the curators constitute "fraud or ill practices". The Moutons further contend that there is nothing in the record of the suit for partition to prove that notice of the suit was given as required by the procedural laws in effect at the time of the suit.
LSA-C.C.P. art. 2002 provides in pertinent part:
"A final judgment shall be annulled if it is rendered:
* * * * * *
(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken;
* * * * * *

*655 Except as otherwise provided in Article 2003,[3] an action to annul a judgment on these grounds may be brought at any time."
LSA-C.C.P. art. 2004 states:
"A final judgment obtained by fraud or ill practices may be annulled.
"An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
Article 2002 lists what are generally termed "absolute nullities", while Article 2004 covers the so-called "relative nullities".
The significance of the difference between absolute nullities (vices of form) and relative nullities (vices of substance) is discussed in LeGlue Buick, Inc. v. Smith, 390 So.2d 262 (La.App. 3rd Cir. 1980), as follows:
"A judgment is an absolute nullity when there exists a vice of form. LSA-C.C.P. Article 2002, supra and the Official Comment to that article. A person with interest may show such nullity in collateral proceedings at any time and before any court, for absolutely null judgments are not subject to the venue and the delay requirements of the action of nullity. Nethken v. Nethken, 307 So.2d 563 (La. 1975); Tannehill v. Tannehill, 226 So.2d 185 (La.App. 3 Cir. 1969), cert. denied [254 La. 930,] 228 So.2d 485 (1969); Garnett v. Ancar, 203 So.2d 812 (La.App. 4 Cir. 1967); Franz v. Franz, 315 So.2d 79 (La.App. 4 Cir. 1975); American Bank & Trust Company v. Marbane Investments, Inc., 337 So.2d 1209 (La.App. 3 Cir. 1976). A collateral attack is defined as an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it. Nethken v. Nethken, supra.
"On the other hand, "a final judgment obtained by fraud or ill practices may be annulled ...". LSA-C.C.P. Article 2004. Such a judgment is not an absolute nullity; the nullity must be properly decreed within the time prescribed. The established jurisprudence of this State requires that such grounds be asserted in a direct action and not raised collaterally. Nethken v. Nethken, supra; Pontchartrain Park Homes, Inc. v. Sewerage and Water Board of New Orleans [246 La. 893], 168 So.2d 595 (1964). What is meant by a "direct action" is that the party praying for the nullity of a judgment must bring his action by means of a petition; and the adverse party must be cited to appear, as in ordinary suits. LSA-C.C.P. Article 1201, 2001-2006; Nethken v. Nethken, supra; Garnett v. Ancar, supra."
It is not particularly significant in the instant case whether the judgment of partition was attacked collaterally or directly since evidence on the issue has already been presented at trial in the court of non-waivable venue for a direct attack. See LSA-C. C.P. arts. 44 and 2006; and Franz v. Franz, 315 So.2d 79 (La.App. 4th Cir. 1975).
Thus, it appears that the Moutons are arguing that the lack of proper service of process or a valid judgment of default renders the judgment of partition absolutely null, while the other irregularities complained of render the judgment relatively null. Specifically, the "fraud or ill practices" which the Moutons complain of that would render the judgment relatively null under LSA-C.C.P. art. 2004 are the failure of the attorneys representing the absentee co-owners to contact them or to appear on their behalf to present defenses to the judgment of partition or to the sale. Also in the category of relative nullities is the Moutons' allegation that copies of the petition and citation are not shown by the record to have been affixed to the courthouse door as required at the time of the suit.
Actions to set aside judgments of partition or sheriffs' sales of property are subject to the prescriptive periods found in *656 LSA-C.C. arts. 3542[4] and 3543.[5] Furthermore, LSA-C.C.P. art. 5098 states:
"The failure of an attorney appointed by the court to represent an unrepresented party to perform any duty imposed upon him by, or the violation by any person of, the provisions of Articles 5092 through 5096 shall not affect the validity of any proceeding, trial, order, judgment, seizure, or judicial sale of any property in the action or proceeding, or in connection therewith.
For a wilful violation of any provision of Articles 5092 through 5096 an attorney at law subjects himself to punishment for contempt of court, and such further disciplinary action as is provided by law."
As can be seen, the action to nullify the sale because of the alleged failure of the attorneys appointed by the court to perform their duties is specifically prohibited by LSA-C.C.P. art. 5098. Also, the attempt to nullify the sale because of the alleged failure to provide proper notice is prescribed under LSA-C.C. art. 3543. The action to nullify the partition for all relative nullities has prescribed under LSA-C.C. art. 3543. See Demery v. Nelken, 385 So.2d 531 (La.App. 3rd Cir. 1980).
The language of LSA-C.C. art. 3542 would seem to apply also to absolute nullities, although there is authority to the contrary. See Whitten v. Whitten, 303 So.2d 238 (La.App. 2nd Cir. 1974). However, we find it unnecessary to determine whether the five year prescriptive period for actions to rescind partitions under LSA-C.C. art. 3542 applies to absolute nullities as we find no evidence of the absolute nullities complained of in this case.
The absolute nullities of which the Moutons complain are the allegedly inadequate service of process and the allegedly improper default judgment taken against the plaintiffs in the suit for partition. We find no flaws in the procedure followed for service of process by the trial court. The procedure in 1955 (the time of the judgment sought to be annulled) for partition and sale of property owned in indivision when one or more of the co-owners are absentees is found in Sections 4971 through 4974 of Title 13 of the Revised Statutes of 1950. These sections were repealed by Acts 1960, No. 32, § 2, effective January 1, 1961.[6]
*657 The record of the partition suit indicates that seven attorneys were appointed as curators for the seven absent co-owners and that process was properly served on all the curators. The curators all signed a form indicating acceptance of the proces verbal of the partition. The procedure for judgment by default was also properly followed.
The record contains the answer to the suit and notice of suit mailed to the absentee co-owners filed by only one of the curators. However, a curator is not absolutely required to contest the suit or interpose any defense unless he is aware of same. Demery v. Nelken, supra. Also, as to the apparent failure of the other six curators to contest the suit or notify the absentees of the suit, LSA-C.C.P. art. 5098 does not allow these failures to affect the validity of "any proceeding, trial, order, judgment, seizure, or judicial sale of any property ...".
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Herbert Mouton, a/k/a Martin, Morris Mouton, a/k/a Martin, Howard Joseph Mouton, a/k/a Martin, Clarence Joseph Mouton, a/k/a Martin, Vilery Mouton, Gladys Mouton Williams, Eran Mouton Frank, Livingston Mouton, Joseph Junius Landry and Mildred Landry Rose, all of whom allege they reside in Port Arthur, Texas, and Mary Helen Landry Baker who alleges that she resides in Oakland, California.
[2] Paragraph II of plaintiffs' petition reads as follows:

II.
"Petitioners and the defendant herein are owners in common of various undivided interests in the following described immovable properties situated in Vermilion Parish, Louisiana:
1)A certain tract of land lying and being situated in the Parish of Vermilion, State of Louisiana, being situated in Lot No. Seven (7) of the Partition in the Succession of Isaac Taylor, and containing Seven and 45/100 (7.45) acres more or less, being the same property acquired by Eraste Mouton by deed recorded in Volume 58 of Conveyances at page 311, under Entry No. 2885, Records of Vermilion Parish, Louisiana.
2)A certain tract or parcel of land lying and being situated in the East Side of Bayou Vermilion, in Grosse Isle described as Lot No. 8 of the Act of Partition of the Estate of Isaac Taylor and acquired by Joseph Taylor, containing five (5) acres of land. Being the same property acquired by Eraste Mouton by deed recorded in Volume 64, of Conveyances, at page 43 under entry No. 30301, Records of Vermilion Parish, Louisiana.
3)A certain tract of land containing 15 acres more or less, and located in the Northeast quarter Section 21, Township 12 South, Range 4 East, in Vermilion Parish, Louisiana, being the same property acquired by Eraste Mouton under date of January 6, 1920, as per deed recorded in Volume 69, at page 219, under Entry No. 33275, Records of Vermilion Parish, Louisiana."
[3] LSA-C.C.P. art. 2003 states:

"A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002."
[4] LSA-C.C. art. 3542 states:

"The following actions are prescribed by five years:
That for the nullity or rescission of testaments or other acts.
That for the reduction of excessive donations.
That for the rescission of partitions and guarantee of the portions.
This prescription only commences against minors after their majority."
[5] LSA-C.C. art. 3543 states:

"All informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this State, to sell at public auction or at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were owners or part owners at the time of making it, and in the event of such ownership or part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication or private sale thereof."
[6] The text of R.S. 13:4971-4974 before being repealed was as follows:

PART X. PARTITION
"§ 4971. Partition by licitation; co-owners absent and unrepresented, residence unknown, etc.
Whenever any plaintiff shall own an undivided interest in real property situated in the state and shall be unwilling to continue to own the same in indivision, and when a record owner or owners of any interest or interests in the property shall be absent from and not represented in the State of Louisiana, or his or their residences shall be unknown to the plaintiff and have not been ascertained although the plaintiff declares under oath that he has made diligent effort to ascertain same, or he or they shall be dead and the party desiring the partition shall not know who are the heirs of any such decedent, or when the party desiring the partition shall not know whether the record co-owner is or is not dead, the plaintiff co-owner being unwilling to remain in indivision may obtain a partition by licitation of the property in question regardless of its divisibility. Service on the absent unlocated, or unknown defendant or defendants, may be obtained by service on an attorney at law appointed to defend the suit for such defendant or defendants and by affixing copies of the petition and citation on the door of the room where the court in which the suit shall be pending is held, or on a bulletin board located near the entrance to the said court room.
(Source: Acts 1928, No. 96, § 1.)
"§ 4972. Same; petition; service; force of judgment
The party or parties who are unwilling to remain in indivision shall file a petition in the district court of the parish having jurisdiction of the real property in question and make it appear by affidavit that the residence of one or more of the parties who appears or appear of record as co-owner is out of the state or is unknown to plaintiff and has not been ascertained although diligent effort has been made by the petitioner, and that the record co-owner has no representative of record in the state, or that the record co-owner is dead and that the petitioner does not know who are his legal heirs, or that petitioner does not know in spite of making diligent efforts whether or not the record co-owner is dead. The court shall appoint an attorney at law to defend the suit on behalf of the record co-owner or his heirs and citation shall be addressed to the record co-owner or his heirs through the attorney, and copies of the petition and citation shall be affixed to the door of the room where the court in which the suit shall be pending is held, or on a bulletin board located near the entrance to the court room, and a judgment of partition rendered against such attorney at law so appointed shall have the same force and effect against the absent, unlocated or unknown record co-owner or co-owners or their heirs as if rendered against him or them in person.
(Source: Acts 1928, No. 96, § 2.)
"§ 4973. Same; oath and affidavit of plaintiff
The plaintiff availing himself of this remedy must as an evidence of his good faith also make oath and affidavit that the absent or unlocated co-owner of record has not paid the taxes on his interest in the property or, to the knowledge of the affiant, exercised any acts of ownership, during a period of ten years prior to the filing of the suit.
(Source: Acts 1928, No. 96, § 3.)
"§ 4974. Same; sale of property
The property involved in such a suit shall be ordered sold by the sheriff of the parish in which it is situated as in ordinary partitions by licitation and the portion of the proceeds accruing to the absent or unknown owner or owners shall be paid into the hands of the treasurer of the state, who shall deliver to the sheriff duplicate receipts making mention of the sum received and the name of the absent or unlocated co-owner on whose account it has been paid. The funds shall remain in the hands of the treasurer of the state until the person or persons entitled thereto shall cause his quality to be recognized before the judge of the court which decreed the partition and after having cited an attorney appointed by the court to represent absent owner or heirs, all of the proceedings to follow the method pointed out with funds of vacant successions which have been paid into the state treasury.
(Source: Acts 1928, No. 96, § 4.)"